EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hernán Serrano, Síndico de Caribbean Petroleum LP; Caribbean Oil LP; Caribbean Petroleum Refining LP; Gulf Petroleum Corp. and Caribbean Petroleum Corp. <br><br> Recurridos <br><br> v. <br><br> Camioneros Cooperativa de Transporte de Carga; Coop. Camioneros Transporte <br><br> Peticionarios | Certiorari <br><br> 2018 TSPR 42 <br><br> 199 \_\_\_\_ |

Número del Caso: CC-2016-4

Fecha: 15 de marzo de 2018

Tribunal de Apelaciones:

       Región Judicial de Bayamón

Abogados de la parte peticionaria:

       Lcdo. Wigberto Lugo Mender
       Lcdo. Alexis Betancourt Vicenty

Abogados de la parte recurrida:

       Lcdo. Roberto Cámara Fuentes
       Lcda. Elizabeth Villagrasa Flores

Materia: Procedimiento de exequátur - Los tribunales de Puerto Rico no tienen facultad de convalidar sentencias dictadas por los tribunales federales de Estados Unidos mediante el procedimiento de exequátur.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Hernán Serrano, Síndico de Caribbean Petroleum LP; Caribbean Oil LP; Caribbean Petroleum Refining LP; Gulf Petroleum Corp. and Caribbean Petroleum Corp.<br><br>Recurridos<br><br>v.<br><br>Camioneros Cooperativa de Transporte de Carga; Coop. Camioneros Transporte<br><br>Peticionarios | CC-2016-0004 | |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 15 de marzo de 2018.

Nos corresponde determinar si los tribunales de nuestra jurisdicción tienen la facultad de convalidar sentencias dictadas por los tribunales federales mediante el procedimiento de exequátur. Por las razones que exponemos a continuación, resolvemos que la Regla 55 de Procedimiento Civil, infra, que establece el procedimiento de exequátur, no provee para ello.

I

El 16 de diciembre de 2003, el Sr. Hernán Serrano, Síndico de Caribbean Petroleum LP, inició un procedimiento judicial en contra de Camioneros Cooperativa de Transporte de Carga ante el Tribunal de

Quiebras de Estados Unidos para el Distrito de Delaware. Reclamó unas transferencias preferenciales ascendentes a $630,936.12, más las costas e intereses correspondientes. A pesar de que la reclamación se originó ante la Corte de Quiebras, el caso se tramitó ante el Tribunal Federal para el Distrito de Delaware. Ese foro resolvió que Camioneros debía pagar $651,015 al señor Serrano. Esta sentencia advino final y firme.

El 20 de agosto de 2014, el señor Serrano presentó ante el Tribunal de Primera Instancia, Sala de Bayamón, una demanda de exequátur con el propósito de hacer valer la sentencia emitida por el foro federal. Argumentó que procedía brindarle entera fe y crédito al dictamen, ya que cumplía con las exigencias de nuestro ordenamiento jurídico. Señaló que: (1) la sentencia se dictó por un tribunal con jurisdicción sobre la materia y sobre las personas; (2) el tribunal tuvo competencia para atender el asunto; (3) se cumplió con el debido proceso de ley; (4) la sentencia se dictó por un juez imparcial; (5) no es contraria al orden público y, (6) no se obtuvo mediante fraude o engaño. Exequátur, Apéndice, pág. 35. Así pues, solicitó que se dictara sentencia confirmando la que fuera dictada en Delaware. Íd.

Ante esto, Camioneros presentó una moción de desestimación en la que alegó que nuestro ordenamiento jurídico no admite la convalidación de sentencias federales mediante el procedimiento de exequátur.

Fundamentó su alegación en que la Regla 55.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 55.5, se refiere a sentencias de "un estado de Estados Unidos de América o sus territorios" y a sentencias de "otra jurisdicción que no sea un estado de Estados Unidos o sus territorios". En virtud de ello, solicitó la desestimación de la demanda porque dejó de exponer una reclamación que justificara la concesión de un remedio.

El señor Serrano se opuso a la solicitud de desestimación. Adujo que el exequátur es el vehículo procesal adecuado para la convalidación de este tipo de dictámenes. Señaló que en Ex parte Márquez Estrella, 128 DPR 243 (1991), este Tribunal no hizo distinción entre la validación de sentencias federales y estatales, sino que se refirió a sentencias dictadas en jurisdicciones de Estados Unidos.

El Tribunal de Primera Instancia denegó la moción de desestimación. Concluyó que, para propósitos del exequátur, las sentencias dictadas por los tribunales federales de distrito se consideran sentencias de un estado de los Estados Unidos. En la alternativa, señaló que la sentencia se podía convalidar como una dictada por otra jurisdicción que no sea un estado de los Estados Unidos o sus territorios.

Inconforme, Camioneros presentó una petición de certiorari ante el Tribunal de Apelaciones. En síntesis, reiteró los argumentos que presentó en su moción de

desestimación e indicó que las Reglas de Procedimiento Civil federal proveen el procedimiento apropiado para la convalidación de sentencias dictadas por tribunales federales. Señaló que en Ex parte Márquez Estrella, supra, este tribunal indicó que las sentencias federales se ejecutan mediante la expedición de un mandamiento de ejecución por el Tribunal Federal de Distrito para el distrito en donde se pretende ejecutar.

El Tribunal de Apelaciones se negó a expedir el recurso. Concluyó que el foro de primera instancia interpretó correctamente el derecho.

Consecuentemente, Camioneros acudió ante nos mediante una petición de certiorari. Señaló que el Tribunal de Apelaciones erró

> al no expedir el auto de certiorari y no revocar la resolución de Primera Instancia que denegó la desestimación de la Demanda de Exequátur bajo la Regla 10.2(5) de Procedimiento Civil, y que concluyó que la parte demandante-recurrida puede convalidar y reconocer una sentencia federal por medio del mecanismo de Exequátur (Regla 55.5 de Procedimiento Civil), habiendo un procedimiento federal específico para la convalidación de sentencias federales provisto por la Regla 69 de Procedimiento Civil Federal. Certiorari, pág. 5.

El 18 de marzo de 2016 expedimos el auto de certiorari y, con el beneficio de la comparecencia de ambas partes, procedemos a resolver la controversia incoada.

II

Se llama exequátur al procedimiento de convalidación y reconocimiento judicial de una sentencia extranjera por los tribunales del foro donde se pretende hacer efectiva.

Regla 55.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 55.1. En el procedimiento de exequátur, las sentencias extranjeras son aquellas dictadas por tribunales ajenos al Estado Libre Asociado, *tanto aquellas dictadas por tribunales de países extranjeros como las dictadas por tribunales estatales de Estados Unidos*. Informe de Reglas de Procedimiento Civil, Vol. 1 (Dic. 2007), pág. 637. Véanse, además, Ex Parte Márquez Estrella, supra, esc. 5; Sosa v. Registradora de la Propiedad, 145 DPR 859 esc. 13 (1998). (Énfasis nuestro.)

La Regla 55.5 de Procedimiento Civil, supra, establece el procedimiento para la tramitación del exequátur en esta jurisdicción. Por su parte, el inciso (a) de esta regla fija los requisitos para obtener el reconocimiento y convalidación de sentencias de los tribunales de los estados de la Unión. Finalmente, el inciso (b) de la Regla 55.5 de Procedimiento Civil, supra, establece los requerimientos para obtener el reconocimiento y convalidación de sentencias dictadas por tribunales de países extranjeros.

Distinto a las sentencias estatales y a las sentencias dictadas por tribunales de países extranjeros, las sentencias dictadas por tribunales federales no fueron incluidas en la definición de "sentencia extranjera" provista en el Informe de Reglas de Procedimiento Civil, supra. Tampoco fueron incluidas por este Tribunal en Ex Parte Márquez Estrella, supra.

Además, estas se encuentran ausentes tanto del texto de la Regla 55.5 de Procedimiento Civil, supra, como del Informe de Reglas de Procedimiento Civil, supra.

No empece lo anterior, una parte que resultó victoriosa en el foro federal no está impedida de hacer efectivo el dictamen en la jurisdicción territorial de Puerto Rico. En Sosa v. Registradora de la Propiedad, supra, esc. 17, reafirmamos lo dicho en Ex Parte Márquez Estrella, supra, y señalamos que

> las sentencias emitidas por los tribunales federales se ejecutan mediante un mandamiento de ejecución expedido por la corte de distrito de Estados Unidos para el distrito donde se pretende hacer efectiva la misma, siguiendo el procedimiento dispuesto en la jurisdicción estatal para la ejecución de sus propias sentencias, a menos que exista una ley federal que sea aplicable, conforme lo dispone la Regla 69 de las Reglas de Procedimiento Civil federal, Fed.R.Civ.P. 69 (28 U.S.C.). *Márquez Estrella*, *Ex parte*, ante, pág. 250.

La Sección 1963 de la Ley de la Judicatura Federal, 28 U.S.C. sec. 1963, permite la ejecución de sentencias en un tribunal de distrito distinto al que la emitió, en aquellos casos en los que las causas de acción estén basadas en reclamaciones de dinero o propiedad. Por lo tanto, un litigante que haya prevalecido en el foro federal podrá hacer valer su sentencia en el Tribunal de Distrito Federal para el Distrito de Puerto Rico, aunque el dictamen provenga de un tribunal federal de otro distrito.

III

Cabe señalar que, la Regla 55.5(a) de Procedimiento Civil, supra, obedece a la necesidad de incorporar en nuestra legislación un mecanismo para cumplir con las disposiciones de la cláusula sobre entera fe y crédito. Art. IV, Sec. 1 de la Const. EE.UU., LPRA, Tomo 1. En lo pertinente, el Informe de Reglas de Procedimiento Civil, supra, dispone lo siguiente:

> [L]a cláusula sobre entera fe y crédito, Art. IV, Sec. 1 de la Constitución de Estados Unidos, L.P.R.A., Tomo 1, no aplica a sentencias extranjeras. En relación con las sentencias *estatales* norteamericanas, las disposiciones de la referida cláusula constitucional sí aplican, pero permiten la intervención de nuestros tribunales; no operan *ex proprio vigore*. De modo que los tribunales de Puerto Rico tendrán que darle entera fe y crédito a las sentencias dictadas en jurisdicciones *estatales* de los Estados Unidos independientemente de lo que sean la política pública y las disposiciones legales de Puerto Rico sobre la materia o asunto de que se trate, siempre y cuando tales sentencias hayan sido dictadas por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma, mediante el debido proceso de ley y no hayan sido obtenidas por fraude. Informe de Reglas de Procedimiento Civil, supra, pág. 638. (Énfasis nuestro.)

Por otro lado, los tribunales estatales que han resuelto que tienen la facultad de convalidar sentencias dictadas por el foro federal se han basado en la aprobación en el estado de una ley uniforme sobre reconocimiento de sentencias. Véanse, Keeton v. Hustler Magazine, Inc., 815 F.2d 857 (2d Cir. 1987); Bechtel Corp v. Western Contracting Corp., 414 N.W.2d 130 (Iowa 1987). Véase, además, Knapp v. McFarland, 462 F.2d 935 (2d Cir.

1972). En estos estatutos, se ha incorporado la siguiente disposición de la Ley Uniforme para la Ejecución de Sentencias Extranjeras de 1964, [*Uniform Enforcement of Foreign Judgments Act of 1964* (UEFJA)]:

> "*[F]oreign judgment" means any judgment, decree, or order of* <u>*a court of the United States*</u> *or of any other court which is entitled to full faith and credit in this state.* (Énfasis nuestro.)

Por esto, al determinar que tienen la facultad de hacer valer sentencias federales, los tribunales estatales han fundamentado sus determinaciones en el lenguaje amplio de la disposición adoptada de la Ley Uniforme para la Ejecución de Sentencias Extranjeras, que abarca dictámenes de cualquier tribunal de los Estados Unidos, incluyendo los federales. Véanse, <u>Keeton v. Hustler Magazine</u>, <u>supra</u>; <u>Betchel Corp. v. Western Contracting Corp.</u>, <u>supra</u>. Véase, además, <u>Knapp v. McFarland</u>, <u>supra</u>. El texto del estatuto uniforme se refiere a sentencias, decretos u órdenes de un tribunal de Estados Unidos ("of a court of the United States"). Ese lenguaje abarcador permite la convalidación de sentencias federales en los estados que aprueben la ley uniforme.

En <u>Knapp v. McFarland</u>, <u>supra</u>, págs. 939-940, el tribunal expresó que el propósito principal detrás de la adopción de la ley uniforme en New York fue facultar a los tribunales para hacer valer sentencias estatales de otros estados pues, en ese estado en particular, ya

existía una disposición legal que autorizaba a los tribunales estatales a convalidar sentencias federales.

En Puerto Rico no se ha adoptado esa ley uniforme. Además, a diferencia de New York, en nuestro ordenamiento tampoco se ha adoptado alguna otra disposición que faculte a los tribunales para hacer valer sentencias federales. New York sí había aprobado legislación antes de adoptar la Ley Uniforme. Así se discutió en Knapp v. McFarland, supra. En cambio, la Regla 55.5(a) de Procedimiento Civil, supra, expresamente hace referencia a sentencias "de un estado de Estados Unidos de América o sus territorios". No se refiere a los tribunales federales ni a sentencias de cualquier tribunal de Estados Unidos, a diferencia de la Ley Uniforme.

Tampoco se desprende del Informe de Reglas de Procedimiento Civil, supra, que la regla aluda a sentencias federales implícitamente. Por el contrario, al igual que nosotros en Sosa v. Registradora de la Propiedad, supra, y Ex Parte Márquez Estrella, supra, la Regla 55.5 es categórica al referirse únicamente a sentencias dictadas por tribunales estatales. Informe de Reglas de Procedimiento Civil, supra, pág. 637.

IV

Finalmente, aunque no hay impedimento constitucional a que nuestro ordenamiento faculte a los tribunales estatales a ejecutar sentencias federales, corresponde a la Asamblea Legislativa y no a este Tribunal conceder esa

autoridad. Como mencionamos anteriormente, este Tribunal ha expresado que si un litigante victorioso en el foro federal interesa hacer efectiva su sentencia, deberá obtener un mandamiento de ejecución expedido por la corte de distrito federal, conforme a la Regla 69 de Procedimiento Civil Federal, 28 U.S.C. App. 69. Véanse, Sosa v. Registradora de la Propiedad, supra; Ex parte Márquez Estrella, supra. Así, es evidente que se excluyeron las sentencias federales del texto de la Regla 55.5 de Procedimiento Civil, supra, debido a que su inclusión resultaba innecesaria.

Por otro lado, al no extender el procedimiento de la Regla 55.5 de Procedimiento Civil, supra, a sentencias federales, no estaríamos actuando en contravención a las disposiciones de la cláusula sobre entera fe y crédito, supra, ya que, aunque nuestros tribunales deben reconocer la supremacía de un dictamen federal, no están obligados a proveer un mecanismo para hacerlos valer. Por el contrario, se ha descansado en la accesibilidad del Tribunal Federal para el Distrito de Puerto Rico para hacer valer las sentencias que provienen de otros distritos federales. Es por esto que la Asamblea Legislativa no ha considerado necesario adoptar en nuestra jurisdicción una disposición legislativa que provea para ello.

Se desprende del Informe de Reglas de Procedimiento Civil, supra, que la intención en la redacción de la

regla era proveer un mecanismo para hacer valer las sentencias emitidas por estados o países que no tienen tribunales que ejerzan su jurisdicción en Puerto Rico. La adopción de la regla responde a una necesidad de proveer un mecanismo para quienes no tienen otra alternativa. Por lo tanto, las sentencias federales no pueden clasificarse como "dictadas por otra jurisdicción que no sea un estado de los Estados unidos o sus territorios". Regla 55.5 de Procedimiento Civil, supra.

Así pues, no estamos ante una laguna en la Regla 55 de Procedimiento Civil, supra, sino ante una decisión basada en nuestras expresiones previas. La normativa vigente dirige la ejecución de sentencias federales al tribunal federal de distrito y despeja así el calendario de los tribunales locales de esos asuntos. En otras palabras, dirige al litigante a la jurisdicción que emitió la sentencia que se quiere ejecutar. Cualquier cambio para que esas sentencias se ejecuten en los tribunales locales es un asunto que compete al trámite legislativo. Const. PR, Art. V, Sec. 2.

Por eso, en este caso el Tribunal de Apelaciones abusó de su discreción al no revisar la determinación del foro primario. Lo que procedía era que el foro apelativo intermedio expidiera el recurso de certiorari y revocara la resolución recurrida, ya que los tribunales de nuestra jurisdicción no tienen la facultad de convalidar sentencias dictadas por los tribunales federales. Para

eso, corresponde instar una acción directamente en el tribunal federal de distrito que está ubicado en San Juan, Puerto Rico.

V

Por los fundamentos antes expuestos, se dicta sentencia en la que se revoca la determinación del Tribunal de Apelaciones y se desestima la demanda.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


| | |
|---|---|
| Hernán Serrano, Síndico de Caribbean Petroleum LP; Caribbean Oil LP; Caribbean Petroleum Refining LP; Gulf Petroleum Corp. and Caribbean Petroleum Corp.<br><br>Recurridos<br><br>v.<br><br>Camioneros Cooperativa de Transporte de Carga; Coop. Camioneros Transporte<br><br>Peticionarios | CC-2016-0004 |


SENTENCIA

En San Juan, Puerto Rico, a 15 de marzo de 2018.

Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca la determinación del Tribunal de Apelaciones y se desestima la demanda.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disintió con opinión escrita, a la que se unieron la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Colón Pérez. El Juez Asociado señor Estrella Martínez disintió con opinión escrita.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hernán Serrano, Síndico de
Caribbean Petroleum LP;
Caribbean Oil LP; Caribbean
Petroleum Refining LP; Gulf
Petroleum Corp. and Caribbean
Petroleum Corp.

      Recurridos

        v.

Camioneros Cooperativa de
Transporte de Carga; Coop
Camioneros Transporte

      Peticionarios

CC-2016-0004

Opinión disidente emitida por la Jueza Presidenta ORONOZ RODRÍGUEZ a la cual se unió la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ y el Juez Asociado SEÑOR COLÓN PÉREZ

En San Juan, Puerto Rico, a 15 de marzo de 2018.

En el día de hoy una mayoría de este Tribunal resuelve que nuestros tribunales no pueden convalidar sentencias dictadas por tribunales federales a través del procedimiento de exequátur. Por entender que en nuestro ordenamiento jurídico no existe impedimento alguno para ello, disiento.

I

El 16 de diciembre de 2003, el Sr. Hernán Serrano, Síndico de Caribbean Petroleum LP, inició un procedimiento adversativo ante el Tribunal de Quiebras de Estados Unidos para el Distrito de Delaware contra Camioneros Cooperativa de Transporte de Carga (Camioneros) con el propósito de

recobrar unas transferencias preferenciales ascendentes a $630,936.12, más las costas e intereses correspondientes.[1] A pesar de que la reclamación se originó ante la Corte de Quiebras, el caso se tramitó ante el Tribunal de Distrito Federal para el Distrito de Delaware, el cual condenó a Camioneros al pago de $651,015.00.[2] Esta sentencia advino final y firme.

El 20 de agosto de 2014, en aras de ejecutar la sentencia federal, el señor Serrano presentó una demanda de exequátur contra Camioneros en el Tribunal de Primera Instancia.[3] En síntesis, argumentó que procedía brindarle entera fe y crédito al dictamen toda vez que éste cumplía con las exigencias de nuestro ordenamiento jurídico. En ese contexto, señaló: (1) que la sentencia se dictó por un tribunal con jurisdicción sobre la materia y sobre las personas; (2) que dicho tribunal tuvo competencia para atender el asunto; (3) que se cumplió con el debido proceso de ley; (4) que la sentencia se dictó por un juez imparcial; (5) que no es contraria al orden público; y (6) que no se obtuvo mediante fraude o engaño.[4] Por consiguiente, solicitó que se dictase sentencia "confirmando la que fuera dictada en el extranjero".[5]

Antes de someter su alegación responsiva, Camioneros

---

[1] El Sr. Hernán Serrano también funge como síndico de Caribbean Oil LP, Caribbean Petroleum Refining LP, Gulf Petroleum Corporation y Caribbean Petroleum Corporation.

[2] Esto es, $630,936.12 de principal, más $10,928.88 en concepto de intereses y $150.00 por las costas del pleito.

[3] El Sr. Hernán Serrano anejó a su demanda copia certificada de la sentencia federal.

[4] *Exequátur*, Apéndice, pág. 35.

[5] Íd.

presentó una moción de desestimación en la que alegó que nuestro ordenamiento jurídico no admite la convalidación de sentencias federales mediante el procedimiento de exequátur. Fundamentó su postura en una lectura literal de la Regla 55.5 de Procedimiento Civil, 32 LPRA Ap. V, que hace referencia a sentencias de "un estado de Estados Unidos de América o sus territorios" y a sentencias de "otra jurisdicción que no sea un estado de Estados Unidos o sus territorios".[6] Por lo tanto, solicitó la desestimación de la demanda por dejar de exponer una reclamación que justificara la concesión de un remedio.

Por su parte, el señor Serrano se opuso a la solicitud de desestimación y argumentó que el exequátur es el vehículo procesal adecuado para la convalidación de este tipo de dictámenes. En apoyo de su contención, señaló que, en Ex parte Márquez Estrella, 128 DPR 243 (1991), este Tribunal no hizo distinción entre la validación de sentencias federales y estatales, sino que se refirió a sentencias dictadas en jurisdicciones norteamericanas.[7]

El Tribunal de Primera Instancia denegó la moción de desestimación pues concluyó que, para propósitos del exequátur, las sentencias dictadas por los tribunales federales de distrito se consideran sentencias de un estado de los Estados Unidos.[8] En la alternativa, señaló que la sentencia se podía convalidar como una dictada por otra

---

[6] *Moción Solicitando Desestimación de la Demanda bajo la Regla 10.2 de Procedimiento Civil*, Apéndice, pág. 39.
[7] *Oposición a "Moción Solicitando Desestimación de la Demanda bajo la Regla 10.2 de Procedimiento Civil"*, Apéndice, pág. 43.

jurisdicción que no sea un estado de los Estados Unidos o sus territorios.[9]

En desacuerdo, Camioneros acudió al Tribunal de Apelaciones mediante un auto de *certiorari*. En esencia, reiteró los argumentos que esgrimió en su moción de desestimación e indicó que las Reglas de Procedimiento Civil Federal proveen el procedimiento apropiado para la convalidación de este tipo de sentencias. A tales efectos, señaló que en Ex parte Márquez Estrella, supra, este Tribunal expresó que las sentencias federales se ejecutan mediante la expedición de un mandamiento de ejecución por el Tribunal Federal de Distrito para el distrito en donde se pretende ejecutar el pronunciamiento.

El Tribunal de Apelaciones denegó la expedición del recurso pues concluyó que el foro primario no incidió en su interpretación del derecho.[10] Inconforme, Camioneros recurrió a este Tribunal y levantó el siguiente señalamiento de error:

> Err[ó] el Tribunal de Apelaciones al no expedir el auto de certiorari y no revocar la resolución de Primera Instancia que denegó la desestimación de la Demanda de Exequátur bajo la Regla 10.2(5) de Procedimiento Civil, y que concluyó que la parte demandante-recurrida puede convalidar y reconocer una sentencia federal por medio del mecanismo de Exequátur (Regla 55.5 de Procedimiento Civil), habiendo un procedimiento federal específico para la convalidación de sentencias federales provisto por la Regla 69 de Procedimiento Civil Federal.[11]

---

[8] *Resolución*, Apéndice, págs. 57-58.

[9] Íd.

[10] Sin embargo, la Jueza Ivelisse Domínguez Irizarry emitió un voto disidente en el cual consignó que las sentencias federales se ejecutan mediante mandamiento de ejecución, conforme a lo dispuesto en la Regla 69 de Procedimiento Civil Federal.

[11] *Certiorari*, pág. 5.

II

El exequátur es el procedimiento provisto por nuestro ordenamiento jurídico para obtener la convalidación de una sentencia dictada por una jurisdicción extranjera. Rodríguez Contreras v. E.L.A., 183 DPR 505, 513-514 (2011); Mench v. Mangual, 161 DPR 851, 856 (2004). Ello pues, por razón de su propia esencia, el principio de soberanía no admite el reconocimiento automático de este tipo de sentencias.[12] Ex parte Márquez Estrella, supra, pág. 128. Para propósitos de esta figura, se consideran extranjeras las sentencias dictadas por un tribunal que no forme parte de la jurisdicción del Estado Libre Asociado de Puerto Rico. Sosa v. Registradora de la Propiedad, 145 DPR 859, 868 esc. 13 (1998); J. L. de Passalacqua, El exequátur en el derecho puertorriqueño, 16 Rev. Der. P.R. 193, 193 (1977).

En lo pertinente a la controversia que nos ocupa, la Regla 55.5 de Procedimiento Civil, supra, permite la convalidación de una sentencia extranjera cuando concurren los siguientes requisitos:

> (a) Si se trata de una sentencia de un estado de Estados Unidos de América o sus territorios:
>
> (1) Que se haya dictado por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma;
> (2) que el tribunal que la emitió haya observado el debido proceso de ley, y
> (3) que no haya sido obtenida mediante fraude.

---

[12] Véase J. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., Pubs. JTS, 2011, T. V, pág. 1565.

(b) Si se trata de una sentencia dictada en otra jurisdicción que no sea un estado de Estados Unidos o sus territorios:

(1) Que se haya dictado por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma;

(2) que se haya dictado por un tribunal competente;

(3) que el tribunal que la emitió haya observado los principios básicos del debido proceso de ley;

(4) que el sistema bajo el cual fue dictada se distinga por su imparcialidad y por la ausencia de perjuicio contra las personas extranjeras;

(5) que no sea contraria al orden público;

(6) que no sea contraria a los principios básicos de justicia, y

(7) que no se haya obtenido mediante fraude.

III

La Opinión mayoritaria concluye que nuestro ordenamiento jurídico no provee para la convalidación de un dictamen federal en nuestros tribunales. La Mayoría fundamenta su postura en que el texto de la Regla 55.5(a) de Procedimiento Civil solo hace referencia a las sentencias de "un estado de Estados Unidos de América o sus territorios" y a las sentencias de "otra jurisdicción que no sea un estado de Estados Unidos o sus territorios". Regla 55.5(a) de Procedimiento Civil, supra. No puedo estar de acuerdo con dicho razonamiento, el cual innecesariamente le cierra las puertas de nuestros tribunales a aquellos litigantes que cuentan con sentencias federales a su favor debido a que la referida regla no atiende explícitamente ese tipo de sentencia.

El razonamiento de la Mayoría pasa por alto que la

aprobación de la Regla 55.5 de Procedimiento Civil de 2009, lo que hizo fue codificar nuestros pronunciamientos jurisprudenciales previos sobre el tema.[13] Rodríguez Contreras v. E.L.A., supra, págs. 521-522; J. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., Pubs. JTS, 2011, T. V, pág. 1564. Estos pronunciamientos jurisprudenciales se dieron, en gran parte, debido a la ausencia de legislación sobre el tema. Ef. Litográficos v. Nat. Paper & Type Co., 112 DPR 389, 404 (1982)

En Ef. Litográficos v. Nat. Paper & Type Co., supra, citando a Von Mehren y Trautman, Recognition of Foreign Adjudications: A Survey and a Suggested Approach, 81 Harv. L. Rev. 1601, 1603-1604 (1968), reconocimos que los siguientes intereses aconsejaban a favor del reconocimiento y ejecución de sentencias extranjeras en nuestra jurisdicción: (1) evitar los costos asociados con la relitigación de un asunto; (2) la protección de los litigantes victoriosos en otros foros frente a las tácticas evasivas y dilatorias de los litigantes vencidos; (3) la necesidad de evitar el parroquialismo y su influencia en la selección del foro por el demandante; (4) la unidad y la estabilidad en el orden internacional jurídico; (5) la condición en muchos casos del foro requirente como el más indicado para la decisión del asunto; (6) ofrecer el respeto debido a las nociones de orden público del foro

---

[13] A tales efectos, véanse Mench v. Mangual, 161 DPR 851 (2004); Sosa v. Registradora, 145 DPR 859 (1998); Ex parte Márquez Estrella, 128 DPR 243 (1991); Silva Oliveras v. Durán Rodríguez, 119 DPR 254 (1987); y Ef. Litográficos v. Nat. Paper & Type Co., 112 DPR 389 (1982).

requerido, así como a nociones sobre la justicia prevalecientes en la comunidad internacional.

Con el propósito de adelantar dichos intereses, y ante la "ausencia de tratado o legislación especial" sobre el tema, en Ef. Litográficos v. Nat. Paper & Type Co., supra, en la pág. 404., adoptamos la normativa de que en Puerto Rico se reconocerán y ejecutarán las sentencias extranjeras sujeto a que cumplan con los siguientes requisitos: (1) sean emitidas por un tribunal con jurisdicción sobre la persona y el asunto; (2) sean emitidas por un tribunal competente; (3) no haya mediado fraude; (4) se haya emitido luego de un procedimiento adversativo; (5) se haya seguido el debido proceso de ley; (6) haya sido emitida por un tribunal que se distinga por su imparcialidad y ausencia de prejuicio contra extranjeros; (7) no sea contraria al orden público del foro requerido, y (8) no sea contraria a los principios básicos de justicia. Íd., en las págs. 395-404.

Luego resolvimos que las sentencias de tribunales estatales de Estados Unidos no operan *ex propio vigore* en nuestra jurisdicción, no obstante la Sec. 1 del Art. IV de la Constitución de Estados Unidos conocida como la cláusula de entera fe y crédito. Rosenberry v. Registrador, 114 DPR 743, 747 (19832). En otras palabras, dichas sentencias también deber ser sometidas a un procedimiento de exequatur. Íd., en las págs. 747-48.

Debido a la ausencia de legislación que estableciera la forma en que se reconocerán y ejecutaran las sentencias

dictadas por tribunales extranjeros, en Ex parte Márquez Estrella, supra, en las págs. 252-56, nos dimos la tarea de uniformar, ratificar y ampliar los requisitos establecidos en Ef. Litográficos v. Nat. Paper & Type Co., al igual que el procedimiento a seguir y las reglas que lo regirán. Ex parte Márquez Estrella, supra, en las págs. 252-56. Aclaramos que, en el caso del reconocimiento y convalidación de sentencias emitidas por tribunales estatales, la cláusula de entera fe y crédito solo permite que nuestros tribunales evalúen la jurisdicción del tribunal, si se observó el debido proceso de ley y que no haya sido obtenida mediante fraude. Íd., en las págs. 255-56.

Como señalamos anteriormente, los criterios que establecimos mediante jurisprudencia fueron eventualmente codificados mediante la aprobación de la Regla 55.5 de Procedimiento Civil, supra. El propósito de la Regla fue establecer un "procedimiento judicial para reconocer y convalidar sentencias del extranjero". Informe de Reglas de Procedimiento Civil, Vol. 1 (marzo 2007), pág. 634. Se entendió como sentencias extranjeras "aquellas dictadas por tribunales ajenos al Estado Libre Asociado, considerándose extranjeras tanto aquellas dictadas por tribunales de países extranjeros como las dictadas por tribunales estatales de Estados Unidos". Íd. (escolio omitido).

Es evidente, pues, que no hemos interpretado la ausencia de un cuerpo normativo que regule puntualmente el

reconocimiento y la convalidación de sentencias extranjeras como impedimento para ejercer nuestra facultad de pautar las normas que estimemos pertinentes para disponer del pleito. Ex parte Márquez Estrella, supra; Ef. Litográficos v. Nat. Paper & Type Co., supra. Más aún, del texto de la referida regla no se desprende una intención legislativa que sea contraria a permitir la convalidación de sentencias federales, sino todo lo contrario ya que provee "para [sentencias] dictadas por tribunales ajenos al Estado Libre Asociado". Informe de Reglas de Procedimiento Civil, supra, pág. 634.

Resulta importante resaltar que una gran cantidad de tribunales estatales norteamericanos tienen la facultad de tramitar pleitos de esta índole. Smith v. State, 461 S.E.2d 553 (Georgia 1995); Budish v. Daniel, 631 N.E.2d 1009 (Massachusetts 1994); Bechtel Corp. v. W. Contracting Corp., 414 N.W.2d 130 (Iowa 1987). La Opinión mayoritaria entiende que dicha facultad se debe a que en esas jurisdicciones se han aprobado variaciones de la Ley Uniforme para la Ejecución de Sentencias Extranjeras de 1964.

No obstante, según se reconoce en la jurisprudencia citada por la Mayoría, aunque dicho estatuto uniforme *permite* el reconocimiento y convalidación de sentencias federales, el propósito principal detrás de la adopción de dicho estatuto fue establecer un procedimiento uniforme para la convalidación de sentencias extranjeras que

cumpliese con la cláusula de entera fe y crédito. Véanse Keeton v. Hustler Magazine, Inc., 815 F.2d 857, 860 (2d Cir. 1987) y Knapp v. McFarland, 462 F.2d 935, 940 (2d Cir. 1972) *revocado por otros fundamentos en* Keeton, 815 F.2d 857. Según se reconoce en Knapp, en el estado de Nueva York se permitía la convalidación de sentencias federales, aun antes de la adopción de la referida legislación uniforme. Knapp, 462 F.2d en la pág. 940.

El mismo texto del estatuto uniforme citado en la Opinión mayoritaria así lo reconoce al aludir a sentencias "which [are] entitled to full faith and credit in this state", Opinión mayoritaria, pág. 7, lo cual no incluye a las sentencias federales, las cuales no están cobijadas por la cláusula de entera fe y crédito. Véase Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 506-07 (2001).

Por todo lo anterior, resolvería que nuestro ordenamiento no impide el reconocimiento y la convalidación de sentencias federales mediante el procedimiento de exequátur. En vista de que los tribunales federales forman parte del sistema judicial norteamericano, evaluaría las solicitudes de este tipo a la luz de los criterios establecidos en la Regla 55.5(a) de Procedimiento Civil, supra, para la convalidación de las sentencias dictadas por un estado de los Estados Unidos de América o sus territorios. De esta forma, quienes interesen obtener la convalidación de una sentencia federal en nuestra jurisdicción tendrían dos alternativas: (1) iniciar

un procedimiento de exequátur,[14] o (2) utilizar el procedimiento federal aplicable.[15]

IV

Por los fundamentos antes expuestos, disiento del proceder mayoritario. En cambio, confirmaría el dictamen recurrido y devolvería el caso al Tribunal de Primera Instancia para que inicie el procedimiento de exequátur correspondiente.

Maite D. Oronoz Rodríguez
Jueza Presidenta

---

[14] El exequátur se tramitaría mediante la presentación de una demanda o a través de una solicitud *ex parte* suscrita bajo juramento. Véase Regla 55.2 de Procedimiento Civil, 32 LPRA Ap. V.
[15] Véase 28 USC sec. 1963.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hernán Serrano, Síndico de
Caribbean Petroleum LP;
Caribbean Oil LP; Caribbean
Petroleum Refining LP; Gulf
Petroleum Corp. and
Caribbean Petroeum Corp.

    Recurridos

     v.                    CC-2016-0004     Certiorari

Camioneros Cooperativa de
Transporte de Carga; Coop.
Camioneros Transporte

    Peticionarios

Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 15 de marzo de 2018.

A la luz de nuestra realidad jurídica y de la relación con los Estados Unidos, este Tribunal se enfrentaba a la oportunidad de realizar una interpretación armoniosa para ubicar las sentencias emitidas por los tribunales federales dentro de las contempladas como viables, para fines del procedimiento del exequátur. Este Tribunal optó por no hacerlo, al considerar que nuestras Reglas de Procedimiento Civil no proveen para ello. Además, sostiene que "aunque nuestros tribunales deben reconocer la supremacía de un dictamen federal, no están obligados a proveer un mecanismo para hacerlos valer". Opinión

mayoritaria, pág. 9. En consecuencia, nos encontramos ante la interpretación poco práctica y desatinada de que Puerto Rico puede validar sentencias extranjeras, pero no podemos convalidar ni reconocer las sentencias de los Tribunales creados por el Congreso Federal. Ante ese desenlace, respetuosamente disiento por los fundamentos que expongo a continuación.

Ante la acelerada globalización y el movimiento poblacional intercontinental, surgió la necesidad de parte de la comunidad internacional de mantener cierta uniformidad y cooperación en el tráfico jurídico. Informe de Reglas de Procedimiento Civil, Vol. 1, 2007, pág. 637. Por tanto, en aras de "mantener una armonía judicial y evitar la obligación arbitraria de las partes a la relitigación de un pleito, . . . los tribunales han aceptado una solución justa de forma que las sentencias extranjeras puedan ser reconocidas fuera del territorio donde se originó el pleito". M. Reyes Berríos, Sentencias Extranjeras Domiciliadas, 53 Rev. Der. PR 321, 321 (2014).

En Puerto Rico, el método para reconocer y validar sentencias extranjeras se conoce como exequátur. Inicialmente, la figura y sus requisitos se desarrollaron de forma jurisprudencial. Véase, Mench v. Mangual, 161 DPR 851 (2004); Sosa v. Registradora, 145 DPR 859 (1998); Ex parte Márquez Estrella, 128 DPR 243 (1991); Silva Oliveras v. Durán Rodríguez, 119 DPR 254

(1987); Ef. Litográficos v. Nat. Paper & Type Co., 112 DPR 389 (1982). Más adelante, el procedimiento del exequátur fue codificado en las Reglas de Procedimiento Civil de 2009. 32 LPRA Ap. V, R. 55.

La jurisprudencia previa a la codificación del exequátur dispuso que sólo las sentencias dictadas por tribunales de países extranjeros y por tribunales estatales de los Estados Unidos pudieran ser ejecutadas mediante el exequátur. Ex parte Márquez Estrella, supra, pág. 250. Por otro lado, se interpretó que las sentencias emitidas por tribunales federales se convalidarían únicamente por la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico, conforme a lo dispuesto en la Regla 69 de Procedimiento Civil Federal. Íd., esc. 5. Sin embargo, tal distinción no consta expresamente en lo codificado en las Reglas de Procedimiento Civil ni en el Informe de Reglas de Procedimiento Civil.  Específicamente, la Regla 55.5 hace alusión solamente a dos categorías no taxativas de sentencias, toda vez que no cubren todo el espectro de posibilidades. El inciso (a) dispone la obligación de los tribunales de verificar que se cumplan ciertas normas en las ocasiones en las cuales se trate "de una sentencia de un estado de Estados Unidos de América o sus territorios". 32 LPRA Ap. V, R. 55.5 (a). Mientras, en el inciso (b) se establecen las normas que se tendrán que verificar cuando se trate de "una sentencia dictada

**por otra jurisdicción** que no sea un estado de Estados Unidos de América o sus territorios". Íd. (b) (énfasis suplido). Es decir, en vez de utilizar un lenguaje restrictivo, como parece entender una Mayoría de este Tribunal al indicar que las sentencias federales no fueron incluidas, opino que en las Reglas se utilizó un lenguaje no taxativo. Entiéndase, la Reglas no incluyen expresamente las sentencias federales, pero mucho menos las excluye como se hizo hace casi dos décadas atrás de forma jurisprudencial. Al contrario, el inciso (b) es tan amplio que permite todas las demás sentencias, incluyendo las federales.

Lo anterior, es cónsono con el principio cardinal de hermenéutica en nuestro ordenamiento, que las reglas procesales se deben interpretar de modo que garanticen "una solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R. 1. "Como norma especial de interpretación en materia procesal, debemos señalar aquélla según la cual debe tratar de obtenerse el mayor resultado con el mínimo de actividad procesal". R. Hernández Colón, Práctica jurídica de Puerto Rico: Derecho Procesal Civil, 6ta ed., San Juan, LexisNexis de Puerto Rico, Inc., 2017, pág. 30. Por tanto, "al interpretar las Reglas de Procedimiento Civil, hay que tener presente, como principio rector, que éstas no tienen vida propia, solo existen para viabilizar la consecución del derecho sustantivo de las partes".

Dávila Mundo v. Hospital San Miguel, Inc., 117 DPR 807, 816 (1986).

Asimismo, hay que destacar que la Opinión mayoritaria se fundamenta en el hecho de que en las jurisdicciones en los Estados Unidos que permiten la convalidación tienen aprobado una ley uniforme de reconocimiento de sentencias. A pesar que en Puerto Rico no hay una ley específica sobre ese asunto, las Reglas de Procedimiento Civil sí lo regulan. Y al igual que en muchas de esas jurisdicciones, las Reglas tienen un lenguaje amplio que debe abarcar los dictámenes de cualquier tribunal de los Estados Unidos, incluyendo los federales. Por tanto, opino que no es correcto limitar el poder de los tribunales por el simple hecho de que no tenemos una ley uniforme cuando contamos con los recursos en nuestro ordenamiento para aplicarlo. Como bien reconoce la Opinión mayoritaria, "no hay impedimento constitucional que nuestro ordenamiento faculte a los tribunales estatales a ejecutar sentencias federales". Opinión mayoritaria, pág. 9.

A su vez, debo señalar que una Mayoría de este Tribunal decide apoyar lo resuelto en "la accesibilidad del Tribunal Federal para el Distrito de Puerto Rico para hacer valer las sentencias que provienen de otros distritos federales". Opinión mayoritaria, pág. 10. Sin lugar a duda, no puedo estar de acuerdo con tal razonamiento. Es de conocimiento público que nuestro

sistema de justicia estatal está representado en trece regiones geográficas y con tribunales en la mayoría de los municipios. Mientras, el tribunal federal tiene una sola sede permanente en San Juan. Asimismo, existe un número mayor de abogados admitidos en los tribunales estatales que en el tribunal federal. Por ende, no considero que exista una verdadera accesibilidad. No todas las personas tienen esa alternativa. Al contrario, opino que el permitir que nuestros tribunales estatales convaliden sentencias federales de otros distritos en los Estados Unidos ayuda a que este procedimiento sea más accesible. Con tal interpretación, respondemos a la "necesidad de proveer un mecanismo para quienes no tienen otra alternativa", habida cuenta de que derribamos barreras físicas y económicas. Opinión mayoritaria, pág. 10.

Al examinar la Regla 55 de Procedimiento Civil en aras de promover una solución justa, rápida y económica, es razonable concluir que *todas* las sentencias de otras jurisdicciones deben poder ser ejecutadas en el foro local a través del exequátur, incluyendo las sentencias federales de los Estados Unidos. Recordemos que las leyes deben "recibir interpretaciones sensatas". R. Elfren Bernier y J.A. Cuevas Segarra, <u>Aprobación e interpretación de las leyes de Puerto Rico</u>, 2da ed. rev., San Juan, Publicaciones JTS, Inc., 1987, Vol. II, p. 242. "Una interpretación de una ley que conduzca a

una conclusión absurda, debe ser rechazada." Íd. Ciertamente, me parece que interpretar que los tribunales puertorriqueños puedan ejecutar sentencias extranjeras, incluyendo aquellas dictadas por tribunales estatales de los Estados Unidos, pero no las sentencias dictadas por tribunales federales lacera significativamente el principio de "cooperación jurisdiccional internacional" que permea el procedimiento de exequátur. M.C. Feuillade, Exequatur en las nuevas reglas de procedimiento civil para el Tribunal General de Justicia de Puerto Rico, 79 Rev. Jur. UPR 1067, 1067 (2010). De igual forma, no promueve la política de cooperación estatal-federal en la prestación de este tipo de servicio a una misma clientela. Asimismo, impone un procedimiento más costoso a las personas interesadas en ejecutar una sentencia federal al forzarlos a acudir a la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico.

Por las razones esbozadas, respetuosamente disiento, ya que entiendo que nuestros tribunales deben tener la facultad de convalidar todas las sentencias de otras jurisdicciones, incluyendo las sentencias dictadas por los tribunales federales.


                              Luis F. Estrella Martínez
                                   Juez Asociado